UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| SHARON KAYE BURNS | CASE NO. 5:18-CV-00990 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| MEGAN J. BRENNAN, POSTMASTER GENERAL | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge on reference from the District Court is a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, or in the alternative, motion for summary judgment [doc. # 16] filed by defendant, Megan J. Brennan, Postmaster General of the United States. The motion is opposed. For reasons assigned below, it is recommended that the Rule 12(b)(6) motion be DENIED, but that the alternative motion for summary judgment be GRANTED.

## Background

On July 31, 2018, Sharon K. Burns filed the instant pro se suit for "hostile work environment violence in the workplace." (Compl.). Burns, who is a postal worker, alleged in her complaint that her supervisor violently charged at her on the workroom floor while shouting and screaming at her. *Id*. She added that this "person" had been involved in several encounters, and therefore, she was in danger from this "person." *Id*. Her requested relief includes the return of four months of sick leave, all medical expenses, plus an award of compensatory and punitive damages for the PTSD that she suffered. *Id*.

Burns attached to her complaint a copy of a decision issued by the U.S. Equal Employment Opportunity Commission ("EEOC"), which documented that Burns had filed an

EEO complaint alleging that the Postal Service had "discriminated against her on the bases of sex (female), and reprisal when (1) on March 14, 2015, a supervisor yelled at her and shook her hamper of mail; and (2) beginning March 21, 2015, she has been denied overtime." (May 10, 2018, EEOC Decision on Request for Reconsideration; Compl., Exh.). The EEOC denied the request for reconsideration and advised Burns that she had ninety (90) days to file a civil action in the appropriate United States District Court. *Id*. The instant suit followed.

On June 25, 2019, following lengthy delays for service and then for extensions of time to answer, defendant Megan Brennan, Post Master General of the United States Postal Service (the "Postal Service") filed the instant Rule 12(b)(6) motion, or in the alternative, motion for summary judgment. The Postal Service seeks dismissal of plaintiff's complaint on several grounds. First, the Post Service contends that plaintiff's complaint fails to comply with Rule 8's pleading standard because it does not place defendant on notice of plaintiff's claims. Second, plaintiff's hostile work environment claim should be dismissed because she did not exhaust administrative remedies through the EEO process before filing suit under Title VII of the Civil Rights Act of 1964. Third, plaintiff's hostile work environment claim fails on the merits because she cannot satisfy the elements of the claim. Finally, insofar as plaintiff intended or attempted to assert a retaliation claim, she is unable to establish a prima facie case of retaliation.

On July 16, 2019, plaintiff filed her opposition to the hybrid motion whereby she maintained that she felt threatened by "Mr. Wilkerson," and that defendant had retaliated against her by failing to assign her all of the overtime hours that she was eligible for. [doc. # 18]. On July 23, 2019, the Postal Service filed its reply brief. [doc. # 19]. The matter is ripe.

## Rule 12(b)(6) Motion

### I. Standard of Review

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly,*

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of

3

action" does not satisfy Rule 8. *Id*. Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred

to in the plaintiff's complaint and are central to [her] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

**II. Discussion**

The Postal Service seeks dismissal of plaintiff's claims for hostile work environment and retaliation, in part, because of plaintiff's inability to establish a prima facie case to support these claims. However, in *Swierkiewicz v. Sorema*, the Supreme Court held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a Rule 12(b)(6) motion. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511, 122 S.Ct. 992, 997 (2002). The Court explained that the *McDonnell Douglas* framework "is an evidentiary standard, not a pleading requirement." *Id.* at 510.[1] Accordingly, plaintiff's complaint need only comply with Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8; *Swierkiewicz,* 423 U.S. at 515.[2]

While the court certainly agrees that plaintiff's complaint is quite threadbare, plaintiff is not writing on a blank slate. The Postal Service is well aware of plaintiff's charges and allegations because of the various layers of administrative proceedings that plaintiff pursued before filing suit. In fact, defendant adduced copies of these decisions in support of its motion for summary judgment. *See* discussion, *infra*. Under these rather uncommon circumstances, the court finds that plaintiff's complaint meets the "simple requirements of Rule 8(a)," sufficient to provide the Postal Service with fair notice of her claims such that it is able frame a responsive

---

[1] Further, *Twombly* did not overrule *Swierkiewicz*. *See Twombly*, 550 U.S. at 569-70.

[2] The court will analyze plaintiff's claims under the *McDonnell Douglas* framework in the context of the Postal Service's motion for summary judgment.

5

pleading. *See Swierkiewicz, supra*. Indeed, defendant's alternative motion for summary judgment and the voluminous attachments thereto, belie the Postal Service's argument to the contrary.

Furthermore, while the Postal Service also sought dismissal of one or more of plaintiff's claims under Rule 12(b)(6) for failure to exhaust administrative remedies, and on the merits, defendant's arguments rely on extrinsic evidence. Of course, if evidence outside of the pleadings is presented to the court and used in deciding a 12(b)(6) motion, the court must convert the matter to a motion for summary judgment. Fed.R.Civ.P. 12(d); *Knighton v. Merscorp Inc.*, 304 Fed. Appx. 285, 287 (5th Cir. 2008) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 283 (5th Cir.1993)).

In the event of conversion, Rule 12(d) requires that all parties be afforded a reasonable opportunity to present all material pertinent to a motion for summary judgment. *Id.* Specifically, the notice and hearing requirements of Rules 12(b) and 56(c) of the Federal Rules of Civil Procedure must be adhered to. *Mackey v. Owens*, 1999 WL 423077 (5th Cir. June 2, 1999) (unpubl.).

The court, however, need not give a party "express notice" that a motion to dismiss will be treated as a motion for summary judgment:

> given [Rule 12(d)]'s express declaration that a motion to dismiss shall be treated as a motion for summary judgment where matters outside the pleadings are presented to and not excluded by the court, the simple act of placing matters outside the pleadings before the court provides adequate notice that a motion to dismiss may be converted into a motion for summary judgment.

*Mackey, supra* (internal citation omitted).

Here, plaintiff had notice that defendant's motion could be treated as a motion for summary judgment in no small part because the Postal Service alternatively sought relief under Rule 56.

In any event, the court always possesses the inherent authority to dismiss an action *sua sponte*, without motion by a defendant. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 66 F.3d 322, 1995 WL 534901, at *2 (5th Cir. 1995) (unpubl.). A report and recommendation, itself, provides sufficient notice to the parties. *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (citing *Magourik v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998)).

## Summary Judgment

### I. Standard of Review

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is

unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "No genuine issue of material fact exists if the summary-judgment evidence is such that no reasonable juror could find in favor of the nonmovant." *Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d 255, 260 (5th Cir. 2007) (citation omitted).

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in her favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

When a movant bears the burden of proof on an issue, she must establish "beyond peradventure[3] all of the essential elements of the claim . . . to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish her right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

---

[3] I.e., beyond doubt.

8

## II. Discussion

    a) <u>Hostile Work Environment Claim</u>

        i) *Exhaustion*

The Postal Service contends that plaintiff's hostile work environment claim is subject to dismissal for failure to exhaust administrative remedies. Specifically, the Postal Service argues that 1) plaintiff did not assert a hostile work environment claim in/during the agency's administrative process; 2) the Final Agency Decision did not address the hostile work environment claim, and 3) a hostile work environment claim cannot reasonably be expected to grow out of plaintiff's retaliation claim. (M/Dismiss, Memo., pg. 11).

It is manifest that "[a] federal employee must exhaust h[er] administrative remedies against h[er] federal employer before bringing suit under Title VII in federal court." *Francis v. Brown*, 58 F.3d 191, 192 (5th Cir.1995) (citation omitted). Furthermore, "[t]o satisfy the exhaustion requirement, the employee must cooperate in good faith with the agency and the Equal Employment Opportunity Commission in the administrative proceedings." *Id.* (citation omitted). The Fifth Circuit has adopted the following commonsense test for determining whether the Title VII plaintiff cooperated in the administrative process:

> the purpose of exhaustion is to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer. *Good faith effort by the employee to cooperate with the agency and EEOC and to provide all relevant, available information is all that exhaustion requires.*

*Munoz v. Aldridge*, 894 F.2d 1489, 1493–94 (5th Cir.1990) (quoted source omitted).

Here, the record establishes that plaintiff provided the agency with necessary information for it to investigate her hostile work environment claim. For example, the Postal Service acknowledged that Burns alleged harassment in her discrimination complaint. *See* Acceptance for Investigation; Def. MSJ, Exh. II. However, the agency did not accept the claim because it

concluded that the alleged harassment was not frequent or severe enough to be actionable. *Id*. Thereafter, Burns did not indicate to the administrative law judge that she would attempt to reassert her hostile work environment claim. (Order on Status Conference; Def. MSJ, Exh. JJ). Consequently, the final agency decision did not address the hostile work environment claim. (Final Agency Decision; Def. MSJ Exh. MM). Nonetheless, plaintiff appealed the final agency decision to the EEOC, including the initial dismissal of her hostile work environment claim. Ultimately, however, the EEOC affirmed the agency's dismissal of plaintiff's hostile work environment and unlawful reprisal claims. (EEOC Decision; Def. MSJ, Exh. OO).

The court appreciates the Postal Service's exhaustion argument. However, plaintiff *did* raise her hostile work environment claim at the agency level. It is not her fault that the agency rejected the claim out of hand. Given the summary dismissal of her hostile work environment claim, it is not surprising that she was hesitant to advance the claim at the agency level. Regardless, the agency investigated plaintiff's retaliation claim, which included consideration as to whether plaintiff engaged in protected activity. Of course, the protected activity in this case stemmed from plaintiff's reporting of the incident with her supervisor that formed the basis for her hostile work environment claim. Accordingly, the agency had the requisite information before it so it could investigate and resolve the dispute.

    ii)  *Merits*

Title VII prohibits an employer from, *inter alia*, discriminating against any individual with respect to compensation, terms, conditions or privileges of employment because of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Furthermore, the Supreme Court has held that Title VII proscribes the maintenance of "a discriminatorily hostile or abusive environment." *Matherne v. Ruba Mgmt.*, 624 Fed. Appx.

835, 839 (5th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Where, as here, a charge of harassment is levied against a supervisor, the attendant claim for hostile work environment requires proof of four elements: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a 'term, condition, or privilege' of employment." *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 330–31 (5th Cir.2009) (quoted source omitted).

The summary judgment evidence submitted by the Postal Service includes plaintiff's descriptions of at least two incidents with her one-time supervisor, Tristan Wilkerson (sometimes incorrectly referred to by plaintiff as "Wilkinson"). For example, in her January 24, 2018, request for reconsideration to the EEOC, Burns wrote that,

> [i]n February of 2015 I was talking to Supervisor Jerry McCoy about a violation of the contract that Tristan Wilkinson (acting 204B) had put in place when Mr. Wilkinson got up from the supervisor desk in an aggressive manor [sic] walking towards McCoy and I [sic] yelling "What she say, What she say because whatever she have to say she can say it to my face." I said McCoy I need to talk to Mr. Jessie because I don't know what his problem is and we are not on a street corner. I then approached Mr. Davis in his office and notified him of Trist[an's] behavior on the workroom floor. He then called Trist[an], McCoy, and I [sic] in his office for a meeting. I explained to Mr. Davis what I was discussing with McCoy and it was discovered that he (Trist[an]) was in violation of the contract. I stated that I didn't know why he came at me like that and we needed to see what the problem was so that it would not happen again. Mr. Davis then stated that he can assure me that no one had a problem with me and that it would not happen again.

(Jan. 24, 2018, EEOC Reconsideration Request; Def. MSJ, Exh. PP).[4]

In her September 9, 2015, EEO Investigative Affidavit, Burns described the March 14,

---

[4] Although plaintiff's statement is neither sworn, nor made under penalty of perjury, the Fifth Circuit has recognized that, at the summary judgment stage, materials only need be capable of being presented in an admissible form at trial. *See LSR Consulting LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016).

11

2015, encounter with her temporary supervisor, Tristan Wilkerson, as follows:

> [a]s I was headed back to my case, N. Rice on Route 415 stopped me and asked if he (Tristan) asked me to case Route 403. I stated no. While answering her, I hear my name being called. I looked toward the supervisor desk and Tristan was approaching me stating go to your case. I said I'm heading there, but who are you talking to [me] like that. He said I'm talking to you. Get in your case and stay there. He was yelling this @ me. I then said you don't talk to me like that, I'm grown. He then charged at me saying what you say, shaking my hamper and so forth. I said I'm grown. He said I'm grown too. I went to tell Jessie on Monday and he rolled his eyes all over the room saying I talked to [your] supervisors and y'all['s] stories don't match, so that's pretty much it. I told him this is the 2nd time Tristan has approached [me] like that and I feel threaten[ed] by him, and he said O.K. That's when I said since you don't care I will do what I need to do and even file an EEO . . .

(Burns EEO Investigative Affidavit; Def. MSJ, Exh. Y [doc. # 16-26]).[5]

In April 2015, Wilkerson no longer worked at the same station as Burns. (Jan. 24, 2018, EEOC Reconsideration Request; Def. MSJ, Exh. PP). In late 2016 or early 2017, however, Wilkerson won a bid to work a zip code that was in the same building as Burns. *Id*. Burns reported to Davis that she did not feel safe working around Wilkerson. *Id*. Accordingly, she tried to time her arrivals and departures to avoid contact with him. *Id*.

However, on an unspecified date as Burns was heading to work, she noticed a GMC Yukon in the lane next to her that tried to cut her off. *Id*. She passed the vehicle and observed that the driver was Wilkerson. *Id*. Burns reported the incident to acting supervisor Anthony Frazier. *Id*.

Burns heard that at the end of May (of an unspecified year), Wilkerson would have a new zip code in the same unit as Burns. *Id*. Burns told her then-supervisor, Mrs. Cannon, that she was afraid of Wilkerson. *Id*. Cannon told Burns that she would speak to Wilkerson and ask

---

[5] *See also* Def. Exh. Z. To be sure, Tristan Wilkerson contests Burns' version of the encounter. *See e.g.*, Wilkerson EEO Investigative Affidavit; Def. MSJ, Exh. W. However, in the context of the present motion, the court must credit plaintiff's account.

him to stay away from her. *Id*. The next day, Wilkerson tried to speak with Burns, but Burns said "no, no, no," and walked outside. *Id*. Burns told Cannon about the incident, and Cannon assured her that she would report the incident, and that it would be "dealt with." *Id*. Burns heard that on her day off, Gina Jones, the postmaster came to the station to speak with Wilkerson. *Id*. Burns felt really stressed out about the situation and feared for her life. *Id*. She was out of the office for five months because of the situation. *Id*.

Burns stated that Wilkerson had a very violent past, with restraining orders on file at the courthouse. *Id*. In fact, Anthony Frazier also had an altercation with Wilkerson. *Id*. Burns concluded that she "will not have any more mess from Wilk[er]son. [She] will protect [her]self by all means necessary and let the blood be on the hands of the Postal Service." *Id*.

In sum, plaintiff adduced evidence that she was yelled at twice by Wilkerson while he was her acting supervisor, and on one of those occasions, he shook her hamper. Furthermore, on an unknown date, he cut in front of her with his vehicle. Glaringly absent from the record, however, is any evidence that Burns was subjected to sexual harassment or that the harassment was on account of sex. The Supreme Court has emphasized that "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discriminat [ion]* ... because of . . . sex.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80; 118 S.Ct. 998, 1002 (1998). The critical issue is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id*. (citation omitted). Accordingly, plaintiff must prove that "the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "*discrimina[tion]* ... because of . . . sex." *Id*. Such evidence is lacking here. In fact, plaintiff conceded that Wilkerson had other restraining orders against him, and that he had had a run-in

13

with another male worker.

In addition, to support a hostile work environment claim, plaintiff must demonstrate that the harassment affected a term, condition, or privilege of employment. The sexual harassment must be sufficiently severe or pervasive that it alters the conditions of employment and creates an abusive working environment. *Stewart*, 586 F.3d at 330 (citation omitted). To assess whether conduct is "severe or pervasive," the court looks to the totality of the circumstances; relevant factors include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. (citations omitted). Finally, the conduct must be objectively offensive (i.e., a reasonable person would find it hostile and abusive) *and* subjectively offensive (the plaintiff perceived it to be materially objectionable). *Id*. (citation omitted).

While it is manifest that plaintiff personally perceived Wilkerson's conduct to be threatening, the court is not persuaded that Wilkerson's conduct was objectively offensive. By plaintiff's own account, she precipitated the initial incident with Wilkerson by discussing him with another worker, and then she escalated the second incident by talking back to him. Wilkerson's response (yelling at her and shaking her hamper) is not sufficiently severe and pervasive to alter plaintiff's conditions of employment. As it turns out, Wilkerson served as plaintiff's acting supervisor for only another month. While plaintiff understandably may not want to have anything to do with Wilkerson, there is no indication that he did anything further to harass her within the workplace. Finally, there is no indication that Wilkerson has made a habit of stalking her with his vehicle or repeatedly trying to cut her off while driving. Rather, the driving incident appears to have been an isolated matter of happenstance.

In the end, and in response to defendant's motion, plaintiff has failed to meet her burden to adduce evidence to support all of the requisite elements of her hostile work environment claim. Although plaintiff certainly appears to fear Wilkerson, the court is constrained to emphasize that Title VII is not a "general civility code for the American workplace." *Phillips v. Spireon, Inc.*, No. 17-00727, 2019 WL 2550526, at *4 (W.D. La. June 20, 2019) (quoting *Oncale, supra*).

      b)    <u>Retaliation</u>

A prima facie case of retaliation under Title VII contemplates three elements: "(1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Anthony v. Donahoe*, 460 Fed. Appx. 399, 404 (5th Cir. 2012) (citation omitted). If the plaintiff successfully demonstrates a *prima facie* case of retaliation, then the burden shifts to the employer to provide a "legitimate, non-retaliatory reason for the adverse employment action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir.2012) (quoted source omitted). "If the defendant presents evidence that supports that it acted properly, the fact-finder must decide whether retaliation was the but-for cause for the employer's action." *Id.*

An employee has engaged in a protected activity when she "either (1) opposed any practice made an unlawful employment practice by Title VII or (2) if she made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Id.* (citation and internal quotation marks omitted). For purposes of the second element of the prima facie case, the challenged action must be "materially adverse," i.e., that it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Porter v. Houma Terrebonne Hous. Auth. Bd. of*

*Comm'rs*, 810 F.3d 940, 945 (5th Cir.2015) (citation and internal quotation marks omitted). Finally, "[c]lose timing between an employee's protected activity and an adverse action against h[er] may provide the causal connection required to make out a *prima facie* case of retaliation." *McCoy v. City of Shreveport,* 492 F.3d 551, 562 (5th Cir.2007).

In her EEO Affidavit, Burns stated that she was denied overtime from March 14-16, 21-26, April 1-2, and 18, 2015, plus other dates she did not recall. (Burns EEO Investigative Affidavit; Def. MSJ, Exh. Y [doc. # 16-26]). In her opposition to the Postal Service's motion, Burns explained that overtime should be assigned to CCAs (city carrier associates) such as herself before any overtime is assigned to junior carriers. (Pl. Opp. Memo., pg. 2). She contends that she should have received 12 hours in a work day before any junior carriers received any overtime. *Id*. Plaintiff asserts that the Postal Service retaliated against her by improperly assigning approximately half of the overtime hours that she should have received to junior carriers such as Dexter Edwards and Antonio Williams. *Id*.

In its motion, the Postal Service argued that plaintiff cannot establish a prima facie case, in part, because she cannot show that she was denied overtime. However, plaintiff concedes that she did receive *some* overtime; instead, she argues that she did not receive *as much* overtime as she should have. Nevertheless, the Postal Service adduced uncontroverted evidence to show that in the eleven weeks *before* plaintiff stated that she intended to file an EEO claim, she worked 108.46 hours of regular overtime and 10.26 hours of penalty overtime, which averaged out to 9.86 regular and .93 penalty overtime hours per week. (Pl. Overtime Records; Def. MSJ, Exh. G). Conversely, in the nineteen weeks *after* plaintiff advised her manager that she planned on filing an EEO complaint, she worked 200.3 hours of regular overtime and 21.64 hours of penalty overtime, which averaged out to 10.54 regular and 1.14 penalty overtime hours per week.

16

(Pl. Overtime Records; Def. MSJ, Exh. H).   In other words, plaintiff's weekly average of overtime hours *increased* after she purportedly threatened to proceed with a protected activity. Given that plaintiff received more overtime hours after she threatened protected activity, it is difficult to find that a reasonable worker would have been dissuaded from engaging in that activity.

The Postal Service also argues that plaintiff cannot satisfy her prima facie case because she cannot establish that her protected activity was the "but-for cause" of the Postal Service's adverse action.   However, for purposes of the causal element of plaintiff's prima facie case, proximity between the adverse action and the protected activity suffices.   *Garcia v. Professional Contract Services, Inc.*, No. 18-50144, ___ F.3d ___ (5th Cir. Sept. 11, 2019). The "heightened but-for causation requirement applies only in the third step (the pretext stage) of the *McDonnell Douglas* framework."   *Id*.   Here, the alleged reduction of assignment of overtime hours coincided with plaintiff's arguably protected activity.

The Postal Service further contends that even if plaintiff had satisfied her prima facie burden, it consistently assigned overtime work pursuant to its legitimate, non-discriminatory policy.   Of course, plaintiff maintains that the Postal Service violated its policy by assigning some hours to carriers who were not on the Overtime Desired List ("non-ODL carriers") before exhausting all available hours for carriers such as herself who were on the ODL and had seniority.   However, plaintiff has not identified any other CCAs similar to herself in seniority who did *not* engage in protected activity, but *did* receive their full allotment of available overtime hours.

Moreover, in the final agency decision on plaintiff's EEO complaint, it was noted that the union had filed a grievance asking whether management had violated work and overtime

17

assignments for the period from March 4 through July 18, 2015. (Final Agency Decision, pgs. 11-12; Def. MSJ, Exh. MM). According to the decision, the union and management settled the grievance by awarding four employees, including Burns, a lump sum of $275.00. *Id.* Therefore, unless the three other employees also engaged in protected activity, the fact that all four employees were compensated under the settlement agreement negates an inference that the Postal Service retaliated against Burns. In short, plaintiff has not adduced evidence to show that her protected activity was the "but for" cause of the Postal Service's overtime assignments.

## Conclusion

In sum, on the existing record, the undersigned is compelled to find that no reasonable trier of fact could find in favor of the plaintiff and against the Postal Service on her claims under Title VII of the Civil Rights Act of 1964. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 411 (5th Cir. 2008) (no reasonable trier of fact could find for the nonmoving party). "When deciding a motion for summary judgment prior to a bench trial, the district court has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Johnson v. Diversicare Afton Oaks, LLC,* 597 F.3d 673, 676 (5th Cir.2010); *Jones v. United States*, 18-30776, 2019 WL 4050462, at *2 (5th Cir. Aug. 28, 2019).

The court finds that there is no genuine dispute as to any material fact and that defendant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Accordingly,

IT IS RECOMMENDED that defendant Megan J. Brennan's motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 16] be DENIED.

IT IS FURTHER RECOMMENDED that defendant Megan J. Brennan's alterative motion for summary judgment [doc. # 16] be GRANTED, and that judgment be entered in favor

of said defendant, DISMISSING WITH PREJUDICE, plaintiff's claims, in their entirety.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 13th day of September 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE